Council, we will be hearing three arguments this morning and we will start with George v. Rushmore Service Center. Mr. Stern. Good morning. May it please the court. We request we have five minutes for rebuttal. Thank you. The question and perhaps the only question that needs to be decided and certainly the first question to be decided is whether this court, no, whether any federal court can decide any issue in this case. And that goes to the question then of standing and the existence of a concrete harm. In our opening brief, we laid out the common law analog for which we believe justifies standing in this case. I think it's important to note that the existence of a common law analog is because of its historical proof that a suit based upon a statutory violation is, and I'm quoting from, I'll tell you where I'm quoting from in a second, is of the sort traditionally amenable to and resolved by the judicial process. That's Uzub Bunam versus Ryszewski. Mr. Stern, should we be thinking about this in terms of a traditional common law analog or should we be thinking of this as an informational injury? The informational injury doesn't apply here and I think that Rushmore is mistaken in terms of citing the informational injury. It's pretty clear from those cases that there must be something more than just simply, well, there's two aspects of it why it's not an informational injury. First is the cases talk about, our cases, when I say our cases, the Third Circuit cases, Kelly, Uber, talks about that it's an omission of providing information. Isn't that a fair reading of the complaint here that it doesn't identify anywhere the creditor to whom the debt is owed? Well, the distinction I'm making is that I think that the cases say providing wrong information or misleading information or not effectively communicating the information is not an informational injury. An informational injury is only the omission, the utter failure to provide it. But isn't that, again, my question is, isn't that a fair reading of the complaint here that it's alleging that the information on who the original creditor is to whom the debt is owed is omitted entirely from the document? That certainly is, it could be read that way. I acknowledge that our position is that by identifying the servicer as the creditor, fail to provide, fail to identify the creditor. I'm just saying as I'm looking at the decisions that have come out, they seem to talk about in terms of omitting it. In other words, if the letter had not identified anyone as a creditor, I think it clearly could fall into at least we can start talking about informational injury. Well, if you don't have informational injury, then you're squarely under Huber. So how do you satisfy Huber? Well, satisfy Huber, because then we talk about as a common law analog. But Huber required more, Huber required consequences. That's where I was going to get it. That's the next step is once we say, even if we say that providing the wrong information is an informational injury, you still have to get to an adverse consequence. And I concede, we did not assert in the complaint any adverse consequence and none has been shown from anything in the record. So would we then invalidate what the district court did and invalidate its order and invalidate the arbitration? And you get a second shot, is that what you say? Well, we may have a second shot. I can talk about that. But yes, I think that the only thing you can do is put the parties back to the position they would have been in had no federal court exercised any judicial power. You started out here in your briefing in response to the course questions, asserting that there was standing. Is your position at this point that there simply is not standing and that the only course that you would suggest to this court is to vacate the district court's orders? We still stand by the position, our view, and I'll acknowledge that our view with regard to identifying the common law analog of the tort of unreasonable debt collection is novel. We don't have a case to cite to you that says that that is a common law analog for the FDCPA. It has been rejected by the other courts that have addressed it, right? As far as I know, only one court has addressed it, the district court decision. Are you assuming if we were to say no jurisdiction, no standing, and the arbitration was null and void as ordered, is your client covered in state cases based upon this? My understanding in our position with respect to this, and we've had other cases in our office, so I've been through this issue, is there's a New Jersey Supreme Court case called Galligan, which applies wrong form tolling to a situation like this. So in other words, if the case were dismissed, it would be told as of when the federal case was commenced. But New Jersey also has a standing doctrine, even if it's not as perhaps strict as the federal one. And where you've had in the interim the arbitration hearing, where it's apparent from that part of the record that your client didn't even read the document, how could there even, is there really even a case under New Jersey law that there's standing? And if not, what's the purpose of seeking to vacate the district court's orders, vacate the arbitration award here, if you still can't move forward? I mean, then what are we all doing here? Well, let me say this. First of all is, I don't know that if this court decides that there's no jurisdiction, this court can't entertain, it can't go beyond that and can't be, you know, rendering an opinion as to what would happen next. If it's not a case, the court doesn't have judicial power to do anything. And so I think that's first. But second of all is, I don't know that that's the situation. I mean, certainly, you know, prior to TransUnion versus Ramirez, these cases were clearly, you know, there was clearly standing under the FDCPA. There was dozens of cases that supported that the mere violation of the substantive rights under the FDCPA was enough for concrete harm. So, and there are New Jersey cases, including New Jersey Supreme Court cases, that say that New Jersey courts are not bound by the case of controversy limitation that applies to federal courts. My experience has been that generally the state courts are entertaining these cases. But we could get there and, you know, in essence, because of the voidness of this case, again, assuming that the court concludes that there's no standing, then everything about this case really becomes void. And it's not a second bite at the apple. It's a first bite at the apple because what happened here has no significance. It's as if it didn't exist. Even if we accepted your argument as to the district court's orders, that doesn't necessarily render the arbitration award itself invalid or void. Well, absolutely. We were compelled at the defendant's request. We were compelled to arbitrate. At defendant's request, the case was stayed, which under third circuit authority, the district court had no discretion to dismiss the case. It had to stay the case. The only way that we could ever seek appellate review of the arbitration award or the arbitration or the order compelling was by going through the arbitration process. We were compelled to do that. This was not like the cases that were cited, the case from the U.S. Virgin Islands where the parties voluntarily, after litigation, voluntarily, you know, it was a post-dispute agreement to arbitrate the value of the property. That's not what happened here. What happened here was we said, no, we didn't, we never agreed that the arbitration contract that we had that was, it's in the credit card agreement with the bank, never covered, does not cover our claims against the servicer's debt collector. But if a court of, let's, again, assume for purposes of argument that we accepted that the district court didn't have power to order arbitration. Nonetheless, if a court of competent jurisdiction then agreed that the case should have been, it fell within the arbitration clause, why would there need to be a redo of the arbitration under the AAA rules? Wouldn't the arbitration award simply be in want of a court to enforce it? I think that, well, if that were the case, we have no opportunity to ever, ever challenge. I mean, let's assume this. Let's assume that we have standing and we now challenge the order compelling arbitration. Isn't the result that the arbitration and the arbitration award gets vacated and the case then gets decided by the district court? Why should we have less rights? Because the district court never had authority to compel arbitration in the first place. In other words, we never, and we would be denied and never have an opportunity to challenge whether the order compelling arbitration was appropriate in the first place. I'm asking something slightly different. If a court of competent jurisdiction, say, if you end up in a state court and the state court says it's arbitrable, are you suggesting to us that we we would need to vacate the arbitration award in addition to the district court's orders if we agreed with your position? I think because the only reason we were in arbitration was because the district court compelled us to be there. And that's why. It's the same as the Fifth Circuit case that was cited to us on the first request for supplemental briefing. The Fifth Circuit case said that was a situation in which it was void for rightness. The court didn't have jurisdiction and said, even though the case subsequently might, you know, the Fifth Circuit said, you know, they were sending it back to the district court to determine whether the dispute was now right. But assuming that it was right, they said that doesn't retroactively now validate the arbitration award that was in that case that was compelled when the court didn't have jurisdiction. And I think the same thing should apply here is the court. Just be a question for the court of competent, competent jurisdiction to decide. You could say, hey, there should be no estoppel effect. We were compelled to do this, unlike in Brown and like the Fifth Circuit case you cited. And the state court could decide that based upon state law and state contract and estoppel principles. I don't understand why they would have, why there would be that opportunity because the same thing comes back to is that it's void. I mean, come back to the Fifth Circuit decision. I mean, in addition, we have, you know, we cited in our supplemental briefing the cases that talk about where you determine after trial, after trial and a verdict that before final judgment that there's a lack of jurisdiction. And the whole thing gets vacated. So it's not like just because there was a five-hour hearing in an arbitration. But in addition, we also have the issue of what does a court of competent jurisdiction deal with the fact that we've got an application to vacate the arbitration award? How does it decide it? It's a collateral attack. That's an issue that only this court can decide under the FAA. In other words, we follow the procedure. The FAA doesn't, carte blanche, give a district court authority to even consider such an award under Badgero. Isn't that correct? I'm not sure what you're asking. Supreme Court case in Badgero where the Supreme Court said if it's an issue of arbitrability, that's a state contract. Even if the district court originally had jurisdiction, it doesn't necessarily have jurisdiction to consider the motion to vacate. I'll concede I'm not familiar with that decision, so I apologize. But I know I'm out of time, and I don't know if you want me to, if there's anything else. I think I've responded to the questions. I'm not sure if there's other questions. One before you, before you sit down, and that's your colleague on the other side of the aisle has made the argument that this is analogous to cases where someone has voluntarily submitted to arbitration, where that might be an additional reason that the award would still stand, even if in need of enforcement by a different court. And, you know, you responded that you were ordered. But the order here gives a couple of options, right, to Ms. George. It says you can either institute arbitration or you can return to the court. So given the two options that are provided, why wasn't the initiation of arbitration proceedings voluntary? I didn't understand the order to say it that way. Your Honor, the order compelled arbitration and stayed the case. There was nothing else that we could do. The only option we had, other than to abandon the case entirely, was to go through the arbitration process so that we could get a final order so that we could seek review. We could not have done anything else. Did the order refer to an interlocutory appeal? I'm sorry? Did the order refer to if you're going to take an interlocutory appeal, come see me? I don't believe it said anything about that. And certainly we didn't ask them to certify it. And, you know, I mean, I... It says that A3, within 60 days of the date of this order, plaintiff shall submit her claim to arbitration or notify the court of her intention not to do so. So, all right, so, and if we had, what would have been the consequence if we had said we weren't going to do so? The case would have been dismissed, presumably, and, you know, I don't know what would have been the result. At that point, wouldn't you have had the opportunity to ask the court to dismiss it without prejudice? Even to vacate his prior order if you wanted to go to a different forum? Well, we would, under no reason, go to a different forum. We had filed this in federal court. We believed that we had standing. It was the Rushmore who raised the standing issue in their answer to the complaint. And they, notwithstanding having raised that, they went ahead and moved to compel arbitration. So I don't see how we can, under these circumstances, that, you know, we thought we belonged in federal court, and the only way for us to get review of the district court's order compelling arbitration was to go through the arbitration process. But the district court, in its order, gave you an option other than proceeding with arbitration. And that was just to advise the court that we weren't proceeding with arbitration. So our choice was to proceed with arbitration. And then the court would have dismissed the case. I don't know that that's, well, I'm not sure what the court would have done. You know, I don't know what they would have done. Yeah, I guess in some sense, they would have had to terminate the case. But whether it would have been with prejudice, without prejudice. All right, we'll hear from you further on rebuttal. Okay. Good morning, Your Honors. Good morning. How are you? I believe, oh, may I proceed? Great. Thank you. I believe all of the substantive issues on appeal are pretty well briefed and are covered by our briefs and pretty well set in law. The court seems more interested in talking about standing, which I understand. So I'll focus on, I'll rely on our briefs for the substantive issues, if that's okay, and instead address some of the questions that the court raised here with respect to standing. And there's three points I'd like to make, but if the court has questions out of the gate, I'm more than happy to address them. We'll let you start. Great. Thank you. So the first is standing clearly existed at the time the court decided the motion to compel arbitration. Under what theory? I'm sorry, Your Honor? Under what theory? Under the informational theory, Your Honor. Although I do propose that standing isn't necessarily a single path, Judge. I do think that standing can be created under multiple theories. But even under Kelly, there have to be adverse consequences, and there's nothing alleged here, is there? Well, Your Honor, they do allege, although I admit in a more general way than I might like, they did allege that it was confusing and that it would confuse the least sophisticated consumer. But it didn't say I was confused. I agree with you, Your Honor. I submit to the court that if I moved to dismiss for lack of standing under Luan, at that stage I would have lost. I think that the court would have looked at that and said that there's enough there. Well, you did raise standing in your answer to the complaint, did you not? We do, Your Honor. But now you contend that there is standing because you got a favorable arbitration award, correct? Well, we contend that there is standing because they alleged it. And we also contend, Your Honor, that the concept of standing I don't think is a static absolute. And there's a critical concept here that I think is important. And I'm not going to do as well of a job as the Third Circuit has done in the past in articulating this. But I think the most important thing here today is that the elements of standing and the elements of a cause of action are interrelated, but they are not inextricably intertwined. And that means that a person can have standing but still lose a case, and that doesn't deprive them of standing. And while that seems obvious and super simple, it gets complicated in application. Now, this court addressed that in a much more succinct way than I in a case that I'm sorry I didn't cite in my briefs, but it's Horizon Healthcare, 846F3D625. But Horizon was pretty much gutted by Huber, was it not? I mean, Horizon says if you have the claim under the statute, that's enough. But in Huber, we said, you know, you really need more when you're under the FDCPA. Of course. You're right, Your Honor. But the point in Horizon that I think is important is this court said, our decision on Article III standing does not resolve whether plaintiffs have suffered compensable damages. Some injuries may be enough to open the courthouse door, even though they ultimately are not compensable. And while that seems obvious, that someone can lose and not suddenly be deprived of standing, it's complicated because causation is the second element of standing. You have to have an injury, right, standing and redressability. Causation is also an element of pretty much every cause of action. And a plaintiff has Article III standing because they allege they were caused harm. Most defendants, in my experience, say that's not true. And when the finder of fact says, well, you weren't caused harm, that doesn't deprive the plaintiff of standing. They don't get a second bite at the apple. What's the harm besides confusion that's alleged in this complaint? Well, that is the harm that's alleged in this complaint. I'm reading it generously. If you're reading it generously, you're absolutely right, Your Honor. The hurdle that we face here, and this is hard to make. I think only a lawyer can make it, but I'm not the one who made it, is that there's apparently a distinction between reviewing the letter and reading the letter. And that's what plaintiff has put before this court. Now, I don't know what the difference is between reviewing the letter and reading the letter. But I submit to the court it's possible that plaintiff reviewed the letter enough to have standing but didn't read the letter enough to suffer harm or meet her burden of proof. And that's why the arbitrator ruled the way that he did. But even reviewing the letter, at most, the complaint seems to allege confusion. And how is that enough under our case law, even for informational injury? I would submit, Your Honor, that it's not at this stage, but at the stage when the court had to decide the motion to compel arbitration, it was. And the hurdle is that standing can't be a static absolute, because if it is, every losing plaintiff on that issue of causation gets the second bite at the apple in state court, and that can't be. Well, we don't equate. We draw a distinction between merits and damages, you know, on the one hand, and the types of injury that just need to be alleged for standing purposes. Right. You're asking us to treat standing like the jurisdictional amount for a diversity case. What authority do you have that, if it turns out later, and in this case not because of factual or record development, but because of developments in the law that there wasn't standing, that we should just take standing as it was at the time? Isn't this really clarification of the law? It's not some new development in the record. Well, I would submit that the new development in the record is the testimony that she didn't read the letter, despite the prior allegation admission that she did review the record. And there's contradiction there, or at least confusion there, between whatever those distinctions are. So take that out of it completely. Let's just look at the face of the complaint. What injury do we have on the face of the complaint? Well, as Your Honor mentioned earlier, it's a generous injury to give it to her, but the idea of confusion, Your Honor. She doesn't allege even her own confusion. She alleges only that it would confuse the least sophisticated debtor, right? Agreed, Your Honor. However, again, I submit at that point in time, and I think this issue was inherent in standing jurisprudence, Luan, and this Court has repeatedly held, followed Luan, of course, held that the elements, the burden of proof for standing become successively more burdensome. Sorry for using burden twice in the same sentence. But become more burdensome the later in the litigation that you get. So it's possible that someone can allege standing at the pleading stage and the Court can have standing to make those decisions, but then not provide sufficient evidence at the motion for summary judgment stage to establish that standing and then no longer have that standing. And I submit to the Court that it can't be a static absolute. It ties to this idea of the underlying merits interplay. Let me back up. Under Horizon, if the notice was defective, there need not be any allegation as to whether there was adverse consequences or that she read the letter. The violation is a violation. Correct. If it is misleading. Correct. Once it's established it's misleading. So your theory is, okay, they were standing at that time, the Court did not err, and the fact that there's later jurisprudence that casts doubt on that, it shouldn't be given retroactive effect. And what's your best case for that proposition? That's not the point I'm trying to make, Your Honor. Forgive me. I thought it was a good point. Well, thank you. Then I will try to make that point, Your Honor. But the first point I'm trying to make with Horizon is the interplay between the merits and standing. We truly do need to separate that out. And I think that stands, notwithstanding Horizon being gutted. Forgive me, Judge. I do not remember the name of the case, but I will look for a moment. But one of the cases cited in our letter briefs that this Court also identified, identified this concept that the Supreme Court later found that something was unconstitutional, that you couldn't sue the state for the reason. I think it's the lower Colorado River case, but I'm not entirely sure, and I could submit something if I needed to. I think that's correct. And the Court there looked back and said, look, I'm going to have to stop your injunctive relief claim, but I'm not going to stop your damages relief claim because at that point in time, standing existed. And I do think that that, although it's the opposite situation here, I think it wasn't standing. Forgive me. At that point in time, you could pursue that claim. I think that draws some corollary to this issue. But then they did gut what occurred, right? They did gut the injunctive component of it, Your Honor. You're correct. Because that was a forward-going issue, not a past issue. And I would suggest to the Court that what the Court did there is it looked at that time, you had standing under the present law. At this time, that standing no longer exists, so I'm going to stop that injunctive relief claim from moving forward. There's two other issues I'd really like to raise if I can. What is your position if we were to conclude that the district court did not have the authority to order arbitration? Do we reach the question of the validity of the arbitration award itself? And what's your position as to that question? Your Honor, thank you. That's one of the two points I wanted to get to. And the answer to that question is no. Respectfully, I don't think that this Court can reach the question of the motion to vacate. And candidly, that issue is separate and apart from standing. And that issue is the reason that Her Honor raised, and that's the badge row decision. So if I may address that in answer to your question. We raised the jurisdiction of the Court to consider the motion to vacate below. And the district court said, I can consider this motion because the underlying claim is a fair debt collection practice is that claim. In arbitration jurisprudence, that is considered look-through jurisdiction. And the Supreme Court in a case called Vaden said that's okay for a motion to compel arbitration. You can look through the motion, see what the underlying claim is, and say, okay, I've got jurisdiction. But two years ago, the Supreme Court in badge row said, you can't do that for motions to vacate an award. You cannot look at the underlying claim to create federal jurisdiction. What the Court said was it's a contract claim. You either need diversity or a federal statute that requires us to vacate the award. Neither of those two things exist here, Judge. You have a zero-dollar judgment. There is no diversity. We'll never get to the monetary threshold. And the FDCPA, which is the only statute invoked, doesn't require vacatur of the award. To the opposite, all counsel has argued, rather almost George argued, is that the arbitrator got it wrong. He misapplied the FDCPA. And the district court, looking at that, applied look-through jurisdiction to decide the issue. And as a result, it was wrong, respectfully, under badge row. And I would submit that even if this court were to say there's no standing, there would also then be no jurisdiction to decide that issue. And that's because there's one exception, Your Honor, of which I'm aware. And that exception is not from this court. It's actually from the Seventh Circuit. And the Seventh Circuit held, in a case called Kinsella, and, again, I didn't cite it, so I'll read it, 66F41099. And what the Kinsella court held was that if the court originally had jurisdiction to grant a motion to compel and stays the case, it retains that jurisdiction for purposes of motions to vacate, which makes sense. But that exception doesn't apply here if the district court didn't have standing, or rather if Ms. George didn't have standing, because the district court then would have never had jurisdiction to rule on that issue, which means even if you were to apply the exception the Seventh Circuit created for badge row, there's no jurisdiction in the district court to decide the motion to vacate. And I would submit there, Your Honor, then, that the necessary outcome would be to deny, or rather remand, whatever it may be with respect to the motion to compel arbitration, but not address the motion to vacate. And the other reason, Your Honor, is the very practical one you pointed out. Ms. George had a choice. Let's talk about that in a second. But it sounds like the theory that you're putting forward between the order to compel being invalid, if you accept that, and then the court not being able to consider vacating it or not would also deprive them of any substantive review on the merits of the arbitration award. How could that be? Well, the FAA actually deprives the district court of any real substantive review, and this court and all of its holdings have deprived courts of real merits review. You can't just come back and say that they got it wrong. The FAA prohibits that under Section 9. But there is an option to go to state court, and in state court you can move to vacate. And what the badge row case says is they're not without relief. They just have to do it in state court. Well, setting aside an arbitrator's award is a very high threshold, but there is that review. Yes. You know, one's called manifest disregard. Maybe that's still the standard, not post-martial, maybe not. But that decision by the district court would then be reviewed by the court of appeals. What you're suggesting wouldn't allow for any review by any Article III court. How could that be? Well, unfortunately, Your Honor, that's what the badge row court held, is that unless there's an independent basis for jurisdiction, either diversity jurisdiction or a federal statute that says this is void, it has to be pursued in state court. The exception that I mentioned, though, wouldn't apply here from the Seventh Circuit, if there is no standing. Although other circuits have said that exception does not exist. You're absolutely right, Your Honor. But I did want to admit to at least the one exception that I was aware of. What about you said that absent diversity jurisdiction, there has to be a federal statute that requires vacating the award. What kind of statute would that be? Boy, Judge, if I could figure that out, I'd have a law review article that everyone would read because everything I've read on it has struggled to figure out what exactly, what federal statute is out there that would necessitate vacature of an arbitration award. The best examples I could come up with would be any statute that precludes a judgment against a certain type of party or precludes an award against a certain type of party where someone can say I am shielded by this statute from that award, of which I can't identify any specifics, Your Honor. If it's a federal question that is being raised as a challenge on the basis of injustice, that is a complete miscarriage of justice, would that be a federal statute requiring vacater? Under Badgerow, no, Your Honor. Badgerow says that the federal statute would have to require vacater of the order, not just that the party got it wrong. And I'm sorry, I didn't mean to interrupt you. It says the federal statute has to. Well, it says you look at the actual motion as if it were a complaint. Correct. And it says federal statute, not a federal question?  You can't just invoke a federal statute in the motion and say the arbitrator got it wrong. That would be look-through. What it says is you have to identify a statute that necessitates vacater of the award, a statute that says you can't sue Dan McKenna, you can't have an award against Dan McKenna for whatever reason, for whatever status he has or may not have. And as a result, this award has to be vacated, not that the underlying decider of fact got it wrong. Is this even a question we should be deciding in the first instance? Well, Your Honor, it is an issue that we raised below. Regrettably, it's not something that we raised in our briefs, but just like standing, it's something that I submit the court is required to evaluate on its own at all instances and can be raised at any time. So I do submit that if the court is to determine that there is a standing question here and that you can discern it from the record, which I submit isn't all that clear since we don't know the difference between review and read on this current record, if you are to decide that there's no standing, I think it incumbent upon the court, respectfully, to also determine whether there's independent jurisdiction to decide the motion to vacate. What's your best argument that the decision to arbitrate was voluntary when it follows a court order and even if she had gone back to the district court, the most likely outcome would have been dismissal with the district court's ruling res judicata as to compelling arbitration? Well, Your Honor, we don't know what the district court would have done, and I don't deny that potential likely outcome, but I submit that if the issue here is standing, it's not something that she suddenly learned about. The court gave her a choice, go to arbitration or come back, and Ms. George could have come back and said, now that I think about it, I didn't read this, and thus I'm going to bring this in state court. And I think the court then would have been faced with a choice as to whether it had standing or had to allow this to pursue in state court. They only decided there's a standing issue after they lost, and it's a little difficult, Judge, to stand here. And years of jurisprudence on standing, many people on my side of the V arguing there is no standing, often losing, to find a losing class action plaintiff in arbitration to turn around and say, oops, my bad, I didn't read it, please let me start all over in state court. And at some point, people need to be held responsible for their allegations, which is why I submit that there is standing. But if that is, in fact, the case, that she didn't read the letter, insufficient to not have standing, she knew that, and counsel should have known that at the time, and they could have returned to the court and said that. And I believe that that option that the court gave truly separates the order from the arbitration. But that, again, turns on the distinction between reviewing and reading, in your estimation. Judge, I have spent more time than I ever thought I would in my 47 years of life trying to figure out what the difference is between reviewing and reading. But the argument has been made, and perhaps having overthought it, perhaps having practiced law too long, I've been able to come up with the idea that I guess it's possible that you can review a letter enough to have standing, but not read it enough to have suffered the harm necessary to prove your case. But even that, the reviewing sufficiently for standing, requires that we infer from an allegation about what the least sophisticated debtor would have understood, that the plaintiff herself is in that category and was confused and didn't know who to pay as a result. Right. You're right, Your Honor. That inference, though, I think is inherent in the complaint and the stage of litigation that that was at. We have the luxury of hindsight right now. But if I made that motion on that complaint, saying there was no standing, there's no such thing as certainties, Judge, but I'm very confident I would have lost. And the court would have said a reasonable reading of this complaint is that she was confused. Even though she doesn't specifically say, I was confused, she immediately after saying she reviewed it, she says, people get confused by that, something along those lines. And I think that's a reasonable inference, particularly under the standard imposed by Luan at the pleading stage. She says more in the complaint than just being that the least sophisticated debtor would be confused. You're right, Your Honor. Forgive me, I don't remember exactly all of the allegations, but there are maybe four or five paragraphs about how it's misleading, how the least sophisticated consumer would be confused. And those come under the facts specific to her, and immediately after the allegation that she read it. And I'll remind the court, too, that it's somewhat confused by the fact that there were two plaintiffs at the time. Two named plaintiffs, one passed. So those subsequent sets of allegations are not specific to one, but I think in common reading you inferred them to be applicable to the two people above. She says the letters did not properly identify the name of the current creditor. Correct. Whereas the Taylor letter does not even identify the current creditor. You're correct, Your Honor. But we're confined to what she said, presumably, which would be it doesn't properly identify, which would make it not informational injury. Your Honor, I'm thinking only because I don't recall when Ms. Taylor passed. Ms. Taylor passed away at some point after that, and I believe she passed away before we moved to compel. So I would agree with Your Honor, but I do think at the time it was filed, both allegations would be there for standing. But, boy, Judge, you're testing my memory of this case. Are you defending these cases in state court? We don't see them very often in state court, Your Honor, myself. So, no. But if this case is to head in that direction, I suspect I may. The only case involving Ms. George. Yes, Your Honor. To my knowledge, yes. There was another case, Your Honor, and we mentioned it in our appeal brief. There was a claim that Rushmore independently violated the Fair Debt Collection Practices Act by seeking fees in the arbitration. That matter was resolved, and I don't believe has any impact on this case. Is unreasonable debt collection analogous to the FDCPA? It certainly is the premise, I guess, underlying the FDCPA. I don't know enough about New Jersey's historic unreasonable debt collection statute that isn't pursued anymore to be able to say that they're straight analogs. But I do appreciate Her Honor's point about the harm that's necessary if you do. So I do believe it's a sufficient analog, particularly at that stage. And I do submit that, although it's difficult to grasp, the Third Circuit in the Horizon case mentions it. I just don't think standing can be a static absolute. We have to appreciate the time at which the court is faced with these issues and be very careful. And I'm sorry, I'll close on this point. I've far exceeded my time. I apologize. Be very careful to follow this court's guidance in Marshall. While this isn't exactly an issue of finality, per se, we have to be very careful before we decide something is void. And I submit that that necessitates consideration of the time at which those decisions were made. Okay. All right. Thank you. And you're going over time, obviously, with our permission. So apologies is not necessary. We appreciate the helpful input of both parties. And now we'll hear on rebuttal. Thank you, Your Honors. I'd like to first clarify something in terms of the record, and then we can talk about the significance of it, which is this question about reading the letter. And I'm not sure that it really matters, the distinction between the review and the reading. But the testimony was not on the record. And I was present at it. Mr. McKenna was present at it. It's not in the record. His, Mr. McKenna's post-hearing brief to the arbitrator, I think, you know, the arbitrator said that she hadn't read the letter. My recollection was that she said she didn't recall whether she had read it or not. But, you know, and to the extent it may be a distinction. But I don't know that it really matters because having reviewed the letter as alleged in the complaint, and even if the complainant said that she read the letter, it really doesn't make a difference in terms of either the informational injury or any other analysis under, you know, understanding, you know, in terms of standing. It's a distinction without a difference. And I know that certainly Rushmore has taken the position in the two supplemental briefs that somehow that, you know, sort of to suggest that somehow, you know, she said that she didn't read the letter so that there would be a standing issue. That's certainly not the case. And we have other issues, you know, that we've certainly outlined in the brief that we have with the arbitrator's decision, like saying there was no evidence, that we submitted no evidence as to who the creditor was. And we certainly did. You know, there was the collection servicing agreement that particularly identified that the servicer was the servicer and that First Premier Bank was the creditor. There was, you know, the billing statement. So there was absolutely evidence in the record as to who the creditor was. And that was, you know, another issue we had with the arbitration award. And so I do take issue with relying on the arbitrator's statement that she had not read the letter, because I don't think that's what her testimony was. Well, if we're focused on the standing question, we're really looking at what's in the complaint anyway, right? Right. And, again, I agree. But I know that, you know, this has come up, you know, that Rushmore has made this issue about, you know, that somehow there was no standing anymore when she testified that she hadn't read the letter. And I'm just saying is I don't think the ‑‑ I mean, he's relying solely on what the arbitrator said. And I don't think that the record really, you know, there's a full complete record before the court to make that determination whether or not she had read it. That's my only point about that issue. The complaint says that she received and reviewed the letter, that it didn't properly identify the name of the current creditor, and that the least sophisticated consumer would be left in doubt about to whom the alleged debt is owed and if it is legitimate. If one were to infer that by stating that she's putting herself in the category of least sophisticated debtor, I'm sorry, least sophisticated consumer, would that be enough for there to be standing? I mean, under the informational injury, I'd say no. I mean, I think that under, you know, Ramirez and this court's decisions following Ramirez, it's not enough. There has to be some allegation of an adverse consequence. And confusion, clearly, Huber says, you know, confusion is not enough, you know, standing alone. You need something more than that. But isn't the allegation that if she were to say, I was left in doubt about to whom the alleged debt is owed and if it was legitimate, doesn't that indicate without knowing if it's legitimate, that's the reason not to make payment? Well, I think she's got to go once to that next step. And I think she's got to say, as a result, I didn't know, you know, I withheld payment. I made a financial decision based upon, you know, which was to not pay because of the doubt that was created. But that's not alleged here. If she had put this in the first person rather than in the least sophisticated consumer language, why isn't that a fair inference? If you don't know their debt is legitimate, isn't it obvious that you're not going to go forward and pay it? I think we could. I mean, I think that is an argument. I think that's a real stretch based upon these allegations. And bear in mind, at the time that the complaint was filed, we didn't have Ramirez. So no one was looking to make allegations as to adverse consequences or, you know, downstream consequences from that conduct. And at the time there was sufficient case law. I know the main one, I believe it's in our brief, is Bartlett versus Heibel, a Seventh Circuit decision that talks about. And there's a number of other decisions. There's Third Circuit decisions, Second Circuit decisions that talk about that FDCPA claims can be brought by sophisticated consumers who may not be fooled or confused at all about a letter, but which is confusing and misleading to least sophisticated consumers. And they are there to assist and provide protection for the least sophisticated consumer. And that was Congress's intent in adopting it. We cited to the court the Weiss versus Regal decision, the Third Circuit decision, that talks specifically about that, you know, that the bringing of class actions in the FDCPA was a fundamental core concern, you know, a process that Congress established in adopting the FDCPA. So I don't know that you can draw the connection, draw the inference that she's, by this allegation that she put herself in the class of the least sophisticated consumer. Certainly there was plenty of case law at that time that established that you could be sophisticated and not be confused at all. But if the letter is confusing the least sophisticated consumer, the fact that the debt collector sent you a letter that's confusing the least sophisticated consumer was itself a violation of a substantive right for which there was a concrete harm. I can see that that's, under current case law, that's no longer the situation. But at the time the complaint was filed, I think it was. And I want to just briefly, if I can address by way of rebuttal, the Kinsella, Mr. McKenna referred to this Kinsella decision. And I'm not quite certain because it obviously wasn't cited in the briefs, but it seemed to be saying that if there's no standing at the outset, then certainly there's no basis for either the order compelling or for considering the Section 9 motion to vacate. But it seemed to be saying that if there was, if I understand what he's saying, if there was jurisdiction to compel and the court stayed the case, then you don't need to independently show jurisdiction on the motion to vacate. So I'm not certain what the argument was about, you know, the question about, it seemed to me that Rushmore was arguing that if you come back on a motion to vacate, that you have to show independently a basis for jurisdiction, but you don't have to if the case has been stayed following an order compelling. And I think that's our situation. So I don't quite understand why there would be an argument that there could be jurisdiction over the order of compel, but not over the motion to vacate. And I do want to point out, I think Marshall's discussion, the discussion about the limitation of voidness, this is a case that specifically is where, you know, the court was talking about is there is voidness. When there's a complete lack of, when there's lack of subject matter jurisdiction, this is not a case, no federal court has any authority to exercise any judicial power as to the dispute between the parties. I think we understand the argument. Okay, great. Thank you. All right, thank you. Case under advisement.